I vote for a reversal of the judgment appealed from. By section 1 of chapter 228, Laws of 1857, it was enacted that the defendant at every station on its road where it maintained a ticket office, should keep the same open for the sale of tickets for at least one hour prior to the departure of each passenger train. By section 2 it was provided that if any person should at any station where a ticket office was established and open, enter the cars without first having purchased a ticket, it should be lawful for the company to demand and receive five cents in addition to the prescribed rate of fare. The plaintiff entered the cars without a ticket at a station where a ticket office was established, but as we must assume, for the jury have so found, on an occasion when the same was not continuously kept open for the period of one hour before the departure of the train. He contends that, therefore, the demand for the extra five cents was excessive and that principle has been held by this court. (Chase v. N.Y. Central R.R. Co., 26 N.Y. 523.) Hence, had he paid that sum he could, under chapter 185, Laws of 1857, have recovered it back from the company, together with a penalty of fifty dollars for its exaction. I agree with Judge BARTLETT that each party was bound to know and to determine for itself its legal rights, and also that if the plaintiff was within his legal rights he was justified in resisting any attempt to remove him from the cars. The question, as is said by Judge BARTLETT, is not one of good taste (though I deny that good taste requires a passenger to submit to an imposition or unlawful exaction), *Page 290 
but of legal right. The question, however, remains whether the conductor was justified in requiring the plaintiff to pay the additional five cents, though as between the plaintiff and the company it was an unlawful exaction. The object of the statute, that passengers should be induced, under the penalty of an additional fare, to purchase tickets before entering the train, was in the interest of the public as well as in that of the company. There was a ticket office established at the station, and, therefore, the case of the plaintiff, prima facie, fell within the statutory provisions. The conductor did not know, and ordinarily could not know, whether the ticket office there had been kept open continuously for an hour before the departure of the train. He had a right to act on appearances. If he were obliged either to take the statement of every passenger that the office was for some part of the hour closed, or reject it at his peril, in case the statement should prove to be true, the provision requiring the purchase of tickets in advance of entering in the trains would entirely fail. In determining the lawfulness of the act of the conductor we must consider the common course of business of the country, and it seems to me fairly plain that the rule laid down in the courts below would be unreasonable and inconsistent with the ordinary and proper methods of conducting the transportation of passengers on railroads. If the conductor had attempted to exact as fare a sum in excess of that which by law he was, prima facie, entitled to demand, a very different question would be presented. In such a case I would agree with Judge BARTLETT, that the passenger would be justified in resisting an attempt to eject him from the train, and that the good faith or ignorance of the conductor would not relieve the defendant from liability.